**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **EP-20-CR-80-DB** |
| | § | |
| **TROY LEIGHTON QUEEN** | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

On this day, the Court considered the United States's ("the Government")
"Motion to Forcibly Medicate" filed on November 1, 2021.   ECF No. 66.   The next day,
Defendant Troy Leighton Queen ("Mr. Queen") filed his opposition to being forcibly medicated.
ECF No. 68.   After due consideration, the Court will deny the Government's Motion to
Forcibly Medicate.

## BACKGROUND

Troy Leighton Queen is a twenty-four-year-old man with a history of mental
illness but no history of criminal activity.    Forensic Psychological Report 1, 4, ECF No. 62.
Mr. Queen's mental illness has been at the center of this case as it has prevented him from
understanding and participating in his legal proceedings and thus from being competent to stand
trial.  *Id.* at 14.   The Government now seeks to forcibly medicate Mr. Queen to make him
competent to stand trial.   Mot. to Forcibly Medicate 3, ECF No. 66.    Mr. Queen never
consented to antipsychotic medications during his pre-trial proceedings and now opposes the
Government's motion to forcibly medicate him.    Forensic Psychological Report 6, ECF No. 62;
Objs. to Forced Medication 2, ECF No. 68.

The Government alleges that two years ago, at the international bridge in El Paso,
Mr. Queen began walking into the United States in the middle of the street, bypassing the

immigration inspection station.   Crim. Compl. 1, ECF No. 1.   In an attempt to detain him for entry without inspection, a border patrol agent grabbed him on the shoulder.   *Id.*   In response to being grabbed, Mr. Queen threw a punch at the agent, who then tackled him, landing on top of Mr. Queen.   *Id.*   Mr. Queen continued to fight back and aggressively put his hands on the agent's neck.   *Id.*

This event was the beginning of Mr. Queen's two-year long journey of confinement and medical evaluation intended first to determine and later to restore his competency to stand trial.   *See* Forensic Psychological Report 4–5, ECF No. 62.   Between June 2020 and the present, Mr. Queen received two competency evaluations and was committed to a hospital for federal prisoners for four months to restore his competence.   *Id.* During those four months, Mr. Queen periodically attended a "psychoeducational competency restoration group, a weekly didactic designed to educate pre-trial defendants on general legal proceedings."   *Id.* at 2.   He was also regularly seen by doctors who evaluated his mental health functioning.   *Id.*

Dr. Emma Welch, the physician who ran the group, found that despite repeated attempts at educating Mr. Queen about court personnel and procedures, he did not understand the role of court personnel or court procedures.   *Id.* at 7–8, 12–13.   With respect to the proceedings in his own case, Mr. Queen continually insisted that a jury had found him "innocent, not guilty" and that, because he was a U.S. citizen, only one person had to find him not guilty for him to be found innocent.   *Id.* at 6–8, 13.   By the end of the four-month evaluation period, Mr. Queen's examining doctors found that he was "not competent to proceed or make decisions regarding his legal case" and that "he most closely meets criteria for schizophrenia."   *Id.* at 11, 14.

2

The Government now hopes that medication can do for Mr. Queen's competence what the four-month stay could not: restore his competency. The forcible medication of an incompetent defendant involves profound and complex legal and ethical issues. These issues must be examined through the lens of the Supreme Court's decision in *Sell v. United States*, 539 U.S. 166 (2003). After examining the factors laid out in *Sell*, this Court finds that the Government has not shown by clear and convincing proof that its interest in prosecution outweighs Mr. Queen's interest in being free from unwanted antipsychotic drugs.

## LEGAL STANDARD

"'[T]he mentally incompetent defendant, though physically present in the courtroom, is in reality afforded no opportunity to defend himself.'" *Drope v. Missouri*, 420 U.S. 162, 171(1975) (citing Caleb Foote, A Comment on Pre-Trial Commitment of Criminal Defendants, 108 U. Pa. L. Rev. 832, 834 (1960)). For this reason, a criminal defendant may not be tried or plead guilty unless he is competent. *Pete v. Robinson*, 383 U.S. 375, 378 (1966); *Godinez v. Moran*, 509 U.S. 389, 398–99 (1993). To be competent in either case, a defendant must have a "rational understanding" of the legal proceedings and the ability to communicate with his lawyer rationally. *Dusky v. United States*, 362 U.S. 402, 402 (1960).

Courts have a duty to evaluate the competence of a defendant who may not be competent due to mental illness. 18 U.S.C. § 4241(a). This can be done through a competency hearing. *Id.* A defendant found at a competency hearing to be incompetent to stand trial must be civilly committed for up to four months to restore his competency. 18 U.S.C. § 4241(d). If a defendant still has not attained competency, the government may file a motion to forcibly medicate him, thus implicating constitutionally protected liberty interests. *See* Mot. to Forcibly Medicate 2, ECF No. 66.

The 5th amendment provides that "[no] person shall . . . be deprived of life, liberty, or property, without due process of law."   U.S. Const. amend. V.   "The forcible injection of medication into a nonconsenting person's body represents a substantial interference with that person's liberty."   *Washington v. Harper*, 494 U.S. 210, 229 (1990); *see also United States v. Gutierrez*, 443 Fed. App'x. 898, 901 (5th Cir. 2011) ("Criminal defendants have a significant liberty interest in avoiding the administration of unwanted medication.")   Thus, the government may administer drugs against a defendant's will only in "limited circumstances." *Sell v. United States*, 539 U.S. 166, 169 (2003).

The government's interest in trying the defendant must be weighed against the defendant's liberty interest in being free from unwanted antipsychotic drugs, using a four-factor test showing that: (1) "*important* governmental interests are at stake" (2) "involuntary medication will *significantly further* those . . . interests" (3) involuntary medication is *necessary* to further those interests and (4) the "administration of the drugs is *medically appropriate*." *Sell*, 539 U.S. at 180–81.   The Government must prove the four *Sell* factors by clear and convincing evidence.   *United States v. James*, 938 F.3d 719, 720–21 (5th Cir. 2019).

## ANALYSIS

The *Sell* factors focus on the government's interest in "rendering the defendant *competent to stand trial*." *Id.* at 181.   However, there may be alternative reasons to forcibly medicate a defendant, like where a defendant is a danger to himself or others.   *Id.* at 182. Whenever a court considers a motion to forcibly medicate a defendant, it should also consider these alternative reasons.   *Id.* at 183.

## I.   There Are No Alternative Grounds for Forcibly Medicating Mr. Queen.

4

Alternative grounds for forcibly mediating a defendant may include purposes "related to the individual's dangerousness, or purposes related to the individual's own interests where refusal to take drugs puts his health gravely at risk." *Id.* at 182.

On August 13, 2021, an internal administrative hearing was held by the U.S. Medical Center for Federal Prisoners (USMCFP) to determine whether Mr. Queen met the criteria for involuntary administration of anti-psychotic medication due to grave disability or dangerousness. Forensic Psychological Report 9–10, ECF No. 62. Based on the hearing, the examining doctor found that while Mr. Queen "was mentally ill, he did not meet the criteria for involuntary medication at [the] time as he did not appear to be gravely disabled nor dangerous in the correctional environment." *Id.* at 10. While Mr. Queen did "appear[] agitated" at times because he didn't believe he should be confined, he was never violent and was never judged to be dangerous to himself or others in the correctional setting. *Id.* at 8, 14. There is no indication that these characteristics have changed since the evaluation was made. *See* Mot. to Forcibly Medicate, ECF No. 66. Since Mr. Queen is not a danger to himself or others at this time, there are no alternative grounds to forcibly medicate him.

## II.   *Sell* Factors Analysis

As there are no alternative grounds to forcibly medicate Mr. Queen, the Court turns to the questions prompted by *Sell*: "Why is it medically appropriate forcibly to administer antipsychotic drugs to an individual who (1) is *not* dangerous *and* (2) *is* competent to make up his own mind about treatment? Can bringing such an individual to trial *alone* justify . . . administration of a drug that may have adverse side effects . . . ?" *Id.*

The *Sell* court recognized that the question of "whether medication is permissible to render a defendant competent" for trial is far less "objective and manageable" than questions

5

about a defendant's dangerousness.  539 U.S. at 182.  While medical experts might be better poised to make informed opinions about whether certain drugs can be used to address a defendant's dangerous behavior, courts evaluating motions to forcibly medicate on the basis of competence must weigh questions of medical expertise against "quintessentially legal questions of trial fairness and competence."  *Id.*

To meet the "clear and convincing" standard set by the 5th Circuit for motions to forcibly medicate, the government must show that its "factual contentions are 'highly probable.'" *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984) (defining clear and convincing evidence). The Court finds that the Government has not met its burden of showing by clear and convincing proof that its interest in prosecution outweighs Mr. Queen's liberty interest.

**a.  *Are there important government interests at stake? Are there special circumstances that weaken those interests?***

While the Government has an important interest in prosecuting Mr. Queen, special circumstances have weakened that interest.

With respect to the first factor, the *Sell* Court states that "[t]he Government's interest in bringing to trial an individual accused of a serious crime is important."  539 U.S. at 180.  However, the analysis of the government's interest is case specific, and special circumstances many minimize the government's interest in prosecution in a particular case if "the defendant has already been confined for a significant amount of time (for which he would receive credit toward any sentence ultimately imposed)."  *Id.* (citing 18 U.S.C. § 3585(b)).

The Government argues that there is an important government interest in bringing Mr. Queen to trial because he is charged with a "serious, violent felony offense"—assault of a federal officer.  Mot. to Forcibly Medicate 2, ECF No. 66.  The Government further argues that

6

its interest in prosecuting serious crimes is important to "protect . . . the basic human need for security." *Id* (citing *Sell*, 539 U.S. at 180).

Mr. Queen argues that the Government's interest in prosecution is undermined by the length of time he has spent in custody.   Objs. to Forced Medication 2, ECF No. 68.   Mr. Queen has been in custody for almost 24 months.   *Id.*   He argues that "[a] conservative calculation of the U.S. Sentencing Guidelines for Assault of a Federal Officer without a firearm, dangerous weapon, [or] planning . . . provides a guideline range of 15 to 21 months."   *Id.*   The Court agrees with Mr. Queen.

The fact that Mr. Queen has been detained for the majority of time dictated by the sentencing guidelines lessens the Government's interest in bringing him to trial.   Additionally, Dr. Welch's finding that Mr. Queen is not dangerous to himself or others lessens the Government's interest in forcibly medicating Mr. Queen to promote security.   *See Sell*, 539 U.S. at 183 (2003) (explaining that "[e]ven if a court decides medication cannot be authorized on the alternative grounds, the findings underlying such a decision will help to inform expert opinion and judicial decisionmaking in respect to a request to administer drugs for trial competence purposes.").   While the Government has other interests in bringing a defendant to trial that are unrelated to punishment, like publicly condemning a defendant, those interests are especially weak in a case involving a person with undisputed mental illness.   See *United States v. Gillenwater*, 749 F.3d 1094, 1102 (9th Cir. 2014) ("the fact that a defendant's mental disorder contributed to his offense may weaken the government's interest in prosecuting him").

A finding that lessens the Government's interest in prosecution tips the scales in favor of Mr. Queen's liberty interest in being free from unwanted antipsychotics.   With this in mind, the Court will evaluate the remaining three factors.

### b. Will involuntary medication significantly further those interests?

The Government has not shown by clear and convincing proof that forcibly medicating Mr. Queen will significantly further its interests.

In considering the second factor, a court "must find that administration of the drugs is substantially likely to render the defendant competent to stand trial" and "that administration of the drugs is substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense." *Sell*, 539 U.S. at 181.

At the conclusion of Mr. Queen's four-month mental health evaluation period, Dr. Welch prepared a brief report addressing the last three *Sell* factors.   Forensic Psychological Report 15, ECF No. 62.   There, she found that "with the proper prescription and monitoring of anti-psychotic medication, it is substantially likely that Mr. Queen would be restored to competency and that the proposed treatment would be substantially unlikely to have side effects that would interfere significantly with his ability to assist" defense counsel.   *Id.*   Dr. Welch also noted that with respect to antipsychotic medications, different individuals experience side effects in vastly different ways, with some experiencing minor side effects while others experience significant side effects.   *Id.*   Per the report, second-generation anti-psychotic medications used today have "a more favorable side effect profile" compared to the first-generation anti-psychotics used in the past.   *Id.*

Mr. Queen argues that the Doctor's findings are diminished by the fact that the Court "lack[s] a specific treatment plan."   Objs. to Forced Medication 3, ECF No. 68.   The Court agrees with Mr. Queen.

Because of the generalities of the psychological report, the government has not

8

established by clear and convincing proof that the second prong of the *Sell* test is satisfied. While the report discusses the general improvements of antipsychotic medications, the report does not provide a specific plan for Mr. Queen's treatment.    This makes the potential side effects more uncertain and lowers the reliability with which the Court can conclude that the medication would work and how it might influence Mr. Queen's ability to participate in his own defense.    *See Sell*, 539 U.S. at 185 (stating "Whether a particular drug will tend to sedate a defendant, interfere with communication with counsel, prevent rapid reaction to trial developments, or diminish the ability to express emotions are matters important in determining the permissibility of medication to restore competence.")    Thus, the government has not shown by clear and convincing proof that forcibly medicating Mr. Queen will significantly further their interests.

   *c.  Is involuntary medication necessary to further the Government's interests meaning that less intrusive treatments are unlikely to achieve substantially similar results?*

   Less invasive treatments are unlikely to achieve the same results as forcibly medicating Mr. Queen.

   As to the third factor, a "court must find that any alternative, less intrusive treatments are unlikely to achieve substantially the same results," and "a court must consider less intrusive means for administering the drugs."    *Sell*, 539 U.S. at 181.

   In her report, Dr. Welch found that Mr. Queen's "psychotic symptoms are chronic and unlikely to improve . . . without treatment with antipsychotic medication."    Forensic Psychological Report 15, ECF No. 62.    She also believes that less intrusive treatments are "unlikely to achieve substantially the same results."    *Id.*    During his four-month civil

9

commitment, Mr. Queen intermittently participated in a psychoeducational competency restoration group, where he was educated on general legal proceedings. *Id.* at 2. He also received individual education from his doctors about the status of his own legal case. *Id.* at 6–10. Despite these attempts to educate Mr. Queen, he continued to insist that he was found "not guilty innocent" by a jury. *Id.* at 7, 9–10. Given that Mr. Queen's competence did not improve during the four months he was committed and participating in a psychoeducational competency restoration group, the Court agrees that less invasive treatments are not likely to restore Mr. Queen's competence. *Id.* at 15.

### d. Is the administration of the drugs medically appropriate?

The Government has not shown by clear and convincing proof that forcibly medicating Mr. Queen is medically appropriate.

With respect to the fourth *Sell* factor, a "court must conclude that administration of the drugs is *medically appropriate, i.e.*, in the patient's best medical interest in light of his medical condition." *Sell*, 539 U.S. at 181. When evaluating this factor, the specific kinds of antipsychotic drugs to be used matter, since drugs may have varied levels of success and side effects. *Id.* In particular, courts should consider "[w]hether a particular drug will . . . sedate a defendant, interfere with communication with counsel, prevent rapid reaction to trial developments, or diminish the ability to express emotions." *Id.* at 185.

Dr. Welch found that "it is well-established in the literature that the standard treatment for Mr. Queen's mental illness is anti-psychotic medication," and thus "anti-psychotic medication is medically appropriate." Forensic Psychological Report 15, ECF No. 62. However, the forensic report again does not specify the specific drugs that Mr. Queen would receive, and the particular side effects of those drugs. *See id.* The unspecific nature of the

Government's evidence makes it difficult for the Court to evaluate how forcibly medicating Mr. Queen will impact his ability to assist in his defense.   Thus, the Government has not shown by clear and convincing proof that forcibly administering antipsychotic drugs is in Mr. Queen's best medical interest given his condition.

## CONCLUSION

While the government does have an interest in prosecuting Mr. Queen, that interest is weakened by the fact the Mr. Queen has been detained for a significant amount of time.   The Court further finds that while the Government has proven that forcibly medicating Mr. Queen is necessary to further its interest (the third *Sell* factor), it has not proven that forced medication will significantly advance its interests (the second *Sell* factor) or that it is in Mr. Queen's best medical interest (the fourth *Sell* factor).

Accordingly, **IT IS ORDERED** that Defendant United States's "Motion to Forcibly Medicate," ECF No. 66, is **DENIED**.

SIGNED this *23ᵈ* day of **November 2021**.

**THE HONORABLE DAVID BRIONES**
**SENIOR UNITED STATES DISTRICT JUDGE**

11