## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | **EP-20-CR-80-DB** |
| | § | |
| TROY LEIGHTON QUEEN | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

On this day, the Court considered the United States's ("the Government")

"Motion for Examination of Risk Assessment" ("Motion") filed on November 3, 2021.   ECF

No. 69.   Defendant Troy Leighton Queen ("Mr. Queen") filed an "Objection to the

Government's Motion for Examination of Risk Assessment."   ECF No. 71.   After due

consideration, the Court will deny the Government's Motion for Examination of Risk

Assessment.

### BACKGROUND

Troy Leighton Queen is a twenty-four-year-old man with a history of mental

illness but no history of criminal activity.   Forensic Psychological Report 1, 4, ECF No. 62.   In

December of 2019, Mr. Queen was arrested for allegedly assaulting a border patrol officer by

aggressively putting his hands on the officer's neck.   Mot. for Examination of Risk Assessment

1–2, ECF. No. 69.   Mr. Queen disputes the Government's allegations.   He claims that he was

walking on the bike path to circumvent asylum seekers who were blocking the walkway when he

was confronted [by the officer], "tasered multiple times," and aggressively detained.   Obj. to

Government's Mot. 1, ECF No. 71.

But for Mr. Queen's mental illness, he would likely have served his sentence and

been released from prison by now.   He has been detained for over 24 months for a crime that,

under a "conservative calculation of the U.S. Sentencing Guidelines for Assault of a Federal

Officer without a firearm, dangerous weapon, planning or any of the various victim or role

adjustments," carries a sentence of 15 to 21 months. *See* Obj. to Government's Mot. 2, ECF No.

71. His two-year detainment includes four months in which he was civilly committed in a failed

attempt to restore his competency. Forensic Psychological Report 5–6, 14, ECF No. 62. Mr.

Queen has undergone multiple competency examinations but has never been found competent to

stand trial. *Id.* at 4–5, 14.

Last month, the Court denied the Government's Motion to Forcibly Medicate,

finding that, based on the factors enumerated by the Supreme Court in *Sell*, Mr. Queen's liberty

interest outweighed the Government's interest in prosecution. *See* Mem. Op. and Order 11,

ECF No. 70; *Sell v. United States*, 539 U.S. 166 (2003). The Government now seeks a hearing

pursuant to 18 U.S.C. § 4246(a) to evaluate Mr. Queen's dangerousness and "determine[e] how

to properly dispose of this case." Mot. for Examination of Risk Assessment 3, ECF. No. 69.

Mr. Queen opposes the Government's Motion as "an unduly burdensome and duplicative

restraint on [his] liberty interest." Obj. to Government's Mot. 2, ECF No. 71.

It is undisputed that four months ago Mr. Queen's dangerousness was evaluated

by doctors at USMCFP [United States Medical Center for Federal Prisoners] Springfield, where

Mr. Queen was committed for four months. Forensic Psychological Report 9–10, ECF No. 62.

During an administrative hearing, the doctors found that while "Mr. Queen was mentally ill, he

did not meet the criteria for involuntary medication at [the] time as he did not appear gravely

disabled nor dangerous in the correctional environment." *Id.* at 10.

While the court is unaware of the precise differences between an administrative

hearing to determine dangerousness in the *correctional setting* and a hearing pursuant to 18

2

U.S.C. § 4246(a) to determine dangerousness in the *community*, the two determinations appear to be different.   For example, one § 4246(a) examination that was reviewed by a District Court in New Mexico involved a "risk assessment panel" that produced a number representing the defendant's relative risk. *United States v. Martin*, No. CR 08-1012 JB, 2011 WL 5220310, at *4 (D.N.M. Sept. 27, 2011).   This Court now determines whether it should order a full dangerousness hearing pursuant to 18 U.S.C. § 4246, which governs "Hospitalization of a person due for release but suffering from mental disease or defect."

## ANALYSIS

The Court must determine whether it has the authority to order a dangerousness hearing or an examination of Mr. Queen.   It determines that the statute does not grant it such authority.   The Court then examines the due process interests implicated by the Government's Motion, finding that Mr. Queen's interests are in fact threatened.

1.  **Without a Certificate of Dangerousness, the Court Lacks Authority to Order a Dangerousness Hearing or a Psychological Examination.**

The Government requests that the Court

"order the Defendant to be returned to USMCFP – Springfield – for a psychiatric or psychological examination pursuant to Title 18, U.S.C., §§4246(b) and 4247(c)(4)(C), specifically to determine whether the Defendant is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another."

Mot. for Examination of Risk Assessment 3, ECF. No. 69.   The Government then requests that the Court set a dangerousness hearing under Title 18 U.S.C. §4246.   *Id.* at 3–4.

The statute allows a court to order an examination if it first orders a hearing.   18 U.S.C. §4246(b).   Thus, the Court will first decide whether it can order a hearing.   Then, the Court will address whether it will order a psychological examination.

3

**A. The Court has no authority to order a hearing.**

In certain circumstances, § 4246(a) mandates continued hospitalization of a person due for release but suffering from mental disease or defect.   18 U.S.C. § 4246(a). However, § 4246(a) also mandates that the Court follow specific procedures before ordering continued hospitalization.   *Id.*   The statute requires that the director of the facility where the person was committed provide the Court with a certification that the individual "is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another."   18 U.S.C. § 4246(a).

Once the Court receives this certification, it must "order a hearing to determine whether the person is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another."   *Id.*   The Fifth Circuit has held that the statute "establishes the director's certification as a necessary prerequisite to a dangerousness hearing; without the certification, a court ordinarily lacks statutory authority to conduct the hearing."   *United States v. Bonin,* 541 F.3d 399, 401 (5th Cir. 2008).

The Government argues that if a defendant remains incompetent after a civil commitment under § 4241(d), then § 4246(a) requires the court to hold a hearing to determine whether the defendant's release would create a substantial risk of bodily injury to another person or serious damage to property of another.   Mot. for Examination of Risk Assessment 2, ECF No. 69.   While § 4246 is undoubtedly a confusing statute, the Government's interpretation of it is nonetheless a misrepresentation.   *See id.*

The statute obligates a district court to hold a hearing only when a director has

4

certified to a district court that a defendant is dangerous.  *See* 18 U.S.C. § 4246 (a); *Bonin,* 541

F.3d at 401 (holding that § 4246(a) "establishes the director's certification as a necessary

prerequisite to a dangerousness hearing; without the certification, a court ordinarily lacks

statutory authority to conduct the hearing.").   This Court has not been provided with a director's

certificate of Mr. Queen's dangerousness.   Since the Court does not have that certification, the

Court does not have the authority to conduct a hearing pursuant to 18 U.S.C. § 4246(a).  *See*

*Bonin,* 541 F.3d at 401; *see also United States v. Baker*, No. 08-30002-001, 2010 WL 1742222,

at *3 (W.D. Ark. Apr. 29, 2010) ("While the statute is silent as to precisely what course of action

is to be taken if a 'certificate of dangerousness' be not issued, the Court believes it is fairly to be

inferred from the language of the statute that, in the absence of the same, the defendant must be

released.").

### B. The Court will not order a psychological examination.

The Government also requests that Mr. Queen "be returned to USMCFP –

Springfield – for a psychiatric or psychological examination pursuant to . . . §§4246(b) and

4247(c)4(C)."   Mot. for Examination of Risk Assessment 3, ECF No. 69.

The Court reads §4246(b) as presupposing that a dangerousness hearing has been

set pursuant to § 4246(a) to order a psychological exam.   The statute states that "[p]*rior to the*

*date of the [dangerousness] hearing*, the court *may* order that a psychiatric or psychological

examination of the defendant be conducted, and that a psychiatric or psychological report be

filed with the court, pursuant to the provisions of section 4247(b) and (c)."   18 U.S.C. § 4246(b)

(emphasis added).   The statute thus authorizes the Court to order an examination only "prior to .

. . the hearing."   *Id.*   The statute says nothing about a situation in which no hearing has been

ordered.  *See id.*   Moreover, it is § 4246(a), addressing the dangerousness hearing, that is titled

"Institution of proceeding," strongly suggesting it is a dangerousness certification that triggers proceedings under § 4246.   18 U.S.C. § 4246(a).   The psychological exam addressed in § 4246(b), on the other hand, cannot be used as a trigger for a hearing.   *See* 18 U.S.C. § 4246(b). In Mr. Queen's case, no dangerousness hearing is being held.   *See supra* 5.   Since the prerequisite dangerousness hearing is not being held, the Court cannot order a psychological examination.

The text of § 4246(b) also suggests that consideration of a psychological examination is secondary to the consideration of a dangerousness hearing.   Even when a dangerousness hearing will be held, the statute states that a court "*may* order . . . a psychiatric or psychological examination."   *See* 18 U.S.C. § 4246(b).   The statute thus makes clear that, even where a dangerousness hearing *is* held, a court is not mandated to hold one.   Rather, it is within the court's discretion to order—or not to order—a psychological exam.   *Jama v. Immigration & Customs Enf't*, 543 U.S. 335, 346 (2005) ("The word 'may' customarily connotes discretion.") The Court will exercise its discretion and choose not to order Mr. Queen returned to USMCFP Springfield due to the concerns about his liberty articulated below.

### 2. The Court Shares the Defendant's Concerns that Prolonged Detainment Infringes his Due Process Rights.

While the Court's decision is based on statutory grounds, the Court will also address Mr. Queen's argument that additional detainment infringes on his liberty interest under the Fifth Amendment.   Mr. Queen argues that committing him once again "to USMCFP would implicate another nine months of [his] liberty interests."   Obj. to Government's Mot. 2–3, ECF No. 71.   These nine months include a five-month waiting period to be admitted to USMCFP, and assume that Mr. Queen would be evaluated for four months.   *Id.*   The Court shares Mr. Queen's concerns about additional detainment.

6

In its Order denying the Government's Motion to Forcibly Medicate Mr. Queen, the Court discussed the balancing of interests that it must perform in the context of a motion to forcibly medicate. *See* Mem. Op. and Order 4, ECF No. 70. Prolonged detainment of an individual in a more general sense also involves a balancing of interests. *See Oregon Advoc. Ctr. v. Mink*, 322 F. 3d 1101, 1201 (9th Cir. 2003) (citing *Youngberg v. Romeo*, 457 U.S. 307, 320 (1982) ("Whether the substantive due process rights of incapacitated criminal defendants have been violated must be determined by balancing their liberty interests in freedom from incarceration and in restorative treatment against the legitimate interests of the state.").

In its prior Order, the Court found that while the Government does have a legitimate interest in prosecuting Mr. Queen, that interest is weakened by the fact that Mr. Queen has already been detained for over twenty-four months. Mem. Op. and Order 7, ECF No. 70. Another civil commitment would potentially add another nine months to his confinement— meaning he could be confined for almost three years for a crime that under a "conservative calculation of the U.S. Sentencing Guidelines" carries an upper guideline range of twenty-one months. Obj. to Government's Mot. 2, ECF No. 71. That three-year period of confinement would not even include the additional time necessary for Mr. Queen—assuming he had been made competent by that time—to prepare to enter a plea or go to trial.

"[T]he American tradition has not been to commit people to prison or mental institutes merely because they have psychological problems." *United States v. Martin*, No. CR 08-1012 JB, 2011 WL 5220310, at *16 (D.N.M. Sept. 27, 2011). Yet Mr. Queen's mental illness has resulted in months of additional detainment. This Court has concerns about adding to those months of detainment. *See Jackson v. Indiana*, 406 U.S. 715, 738–39 (1972) (finding that hospitalizing a defendant for "three and one-half years on a record that sufficiently

7

establishes the lack of a substantial probability that he will ever be able to participate fully in a trial" violates his due process rights).   This potentially harmful effect of continued detainment on Mr. Queen's liberty interest only strengthens the Court's conclusion that it should not order hearings or examinations that are not required by statute.

## CONCLUSION

The Court will not order a dangerousness hearing or a psychological exam because it lacks a certificate of dangerousness from the director of USMCFP Springfield.   The Court also shares Mr. Queen's concerns that further detainment would infringe his liberty interest under the due process clause.

Accordingly, **IT IS ORDERED** that the United States's "Motion for Examination of Risk Assessment," ECF No. 69, is **DENIED**.

SIGNED this _17_ day of **December 2021**.

**THE HONORABLE DAVID BRIONES**
**SENIOR UNITED STATES DISTRICT JUDGE**